UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-259-GWU

CLAYTON SMALLWOOD, PLAINTIFF,

VS.  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Smallwood

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Smallwood

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Smallwood

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

Smallwood

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Smallwood


One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Clayton Smallwood, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease, osteoarthritis, sciatica, generalized anxiety disorder, an adjustment disorder, a history of lower back and left leg pain, and complaints of panic attacks and sleep disturbances. (Tr. 21). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Smallwood retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 21-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of Mr. Smallwood's age, education, and work experience could perform any jobs if he were limited to "medium" level exertion, with the option of alternating standing and sitting every 30 minutes, and also had the following non-exertional impairments. He:

(1) could occasionally climb, bend, crouch, and crawl; (2) had a "limited but satisfactory" ability to relate to co-workers, interact with supervisors, deal with work stresses, maintain attention and concentration, and work closely with others without undue distraction; and (3) had a "significantly limited" but not precluded ability to understand, remember, and carry out detailed or complex job instructions. (Tr. 60). The VE responded that there would be jobs that the individual could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 61).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Smallwood had filed a prior applications for SSI, and also for Disability Insurance Benefits (DIB), which were denied by an ALJ on January 30, 2004 (Tr. 14). This Court affirmed the administrative decision on March 21, 2005. (Tr. 84-97). He did not request a reopening of the prior decision, and his current alleged onset date is January 31, 2004. (Tr. 14).

Mr. Smallwood testified to severe lower back pain which kept him from performing almost all activities except taking care of his personal needs. (Tr. 42-51). He took Methadone on prescription as a pain reliever, which would help for a short period of time. (Tr. 45-6). Mr. Smallwood also testified to having extremely poor

Smallwood

nerves, especially in crowds, and was taking Valium, which was also somewhat helpful, but he still had frequent panic attacks. (Tr. 43, 45, 49).

The mental hypothetical factors are consistent with the report of Dr. Kevin Eggerman, the only examining mental health specialist, who found that Mr. Smallwood had a generalized anxiety disorder and an adjustment disorder, but would have only a "moderately limited" ability to respond appropriately to work pressures in a usual work setting and no more than a mildly to moderately limited ability to understand, remember, and carry out detailed instructions, and to interact appropriately with the public, supervisors, and co-workers. (Tr. 295). The terms "mild" and "moderate" were not defined. State agency psychologists who reviewed the record also indicated moderate limitations in several areas (Tr. 319-21, 336-7), and, as the Court noted in its prior Memorandum Opinion (Tr. 96), the limitations were not patently inconsistent with the factors given in the hypothetical question. Nor does the plaintiff make any specific objection to the ALJ's findings.

Neither of the plaintiff's treating physicians gave any specific functional restrictions. Office notes for Dr. Werner Grentz reflect treatment between May 29, 2003 and October 4, 2004 but few objective findings were recorded other than muscle spasm and decreased range of motion. (E.g., Tr. 307). Dr. Grentz prescribed the pain medications Lorcet and Soma as well as Valium. (Tr. 315). He also wrote a letter dated October 29, 2004 reciting the plaintiff's subjective

complaints of back and left leg pain, and reported that Mr. Smallwood "states he is only able to sit for 10-15 minutes" before moving around, and had similar limitations in standing and lying down. (Tr. 298). He was being referred to a neurologist/orthopedist to evaluate the possibility of surgery. No functional limitations are given. (Id.).

Beginning in September, 2003, Mr. Smallwood also received treatment from another physician, Dr. Charles Grigsby. The initial evaluation by Dr. Grigsby's physician's assistant showed a normal range of motion of the lumbar spine, but with pain and muscular tightness, normal reflexes, a grossly intact neurological examination, and generally equal muscle tone and strength. (Tr. 376-7). This office also prescribed Valium and Lorcet (Tr. 375, 377), but Dr. Grigsby soon changed the pain medication to Methadone, while continuing to prescribe Valium (Tr. 372).[1] An MRI of the lumbar spine may have been obtained in late 2003 (Tr. 372), although the exact results are not recorded. Dr. Grigsby referred his patient to Dr. Thomas Menke, who examined the plaintiff in November, 2003, shortly before the alleged onset date. (Tr. 290). Dr. Menke noted Mr. Smallwood to be apparently in good condition and "fairly muscular," with a normal gait, and no focal neurological deficits. (Id.). He had back pain bending forward with his fingertips to his knees, and reported

---

[1] Mr. Smallwood apparently continued to obtain Lorcet and Valium from Dr. Grentz. (Tr. 315).

tenderness to palpation over the lower lumbar spine.  Straight leg raising could be done to full extension, although with back pain and leg tightness.  Dr. Menke reviewed an MRI from February, 2000 showing disc desiccation at L4-5 with no significant bulge or neural impingement. (Id.). He listed his "impression" as "severe low back pain essentially incapacitating the patient," and recommended obtaining a new MRI.  (Tr. 289-90).  However, the patient did not keep his follow-up appointment.  (Tr. 289).

Mr. Smallwood continued to see  Dr. Grigsby, who noted that the plaintiff was able to function on his medications, but later added the antidepressant Effexor for complaints of depression and crying spells.  (Tr. 364, 367).  An excuse was provided for jury duty, in August, 2005, evidently due to the sitting requirements only.  (Tr. 361-2).  Dr. Grigsby provided no opinion that would be inconsistent with the ALJ's hypothetical question.

Dr. Gopal Rastogi conducted a consultative examination of Mr. Smallwood in November, 2004.  He found Mr. Smallwood had a slow gait and had difficulty getting out of a chair.  (Tr. 317). Forward flexion was limited to 40 degrees, and there was some diminished sensation in the left lower extremity, although deep tendon reflexes were present.  (Id.).  Dr. Rastogi concluded that the plaintiff had serious back problems, was not able to drive, could not sit, stand, or "do any kind of work without aggravating the pain," and was "not fit for gainful employment."  (Id.).

Smallwood

The ALJ rejected Dr. Rastogi's statement as being conclusory and not supported by significant objective findings. As a one-time examiner, Dr. Rastogi was not entitled to the same weight which would be given to a treating source, and as far as can be determined from his report, he did not conduct any objective testing such as x-rays or have any outside records to review. (Tr. 316-17). Under the circumstances, and with treating physicians also providing limited objective findings and no specific restrictions, the ALJ could reasonably have rejected Dr. Rastogi's opinion as being a vocational conclusion outside his area of expertise. State agency physicians who reviewed the record through November, 2004, opined that the plaintiff did not even had a "severe" physical impairment. (Tr. 318, 355). However, the ALJ generally adopted the physical restrictions from the prior, final administrative decision (Tr. 92), although he added restrictions on alternating sitting and standing every 30 minutes. The plaintiff failed to prove that he would have greater restrictions.

The decision will be affirmed.

This the 7th day of March, 2007.



Signed By:
*G. Wix Unthank*
**United States Senior Judge**